(No. 12510.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BEN SILVER, Plaintiff in Error.

*Opinion filed February 20, 1919.*

1. CRIMINAL LAW—*credibility of witnesses is question for jury.* The extent to which the credibility of the witnesses in a criminal case is affected by their relation to the defendant, by the nature of the stories to which they testify and their contradiction by other witnesses is a question for the jury to determine.

2. SAME—*what will authorize instructions referring to circumstantial evidence.* In a prosecution for the sale of intoxicating liquor in anti-saloon territory, although witnesses give direct evidence of the offense, proof of the possession by the defendant of an unusual quantity of intoxicating liquor and of his permitting it to be drunk in his house constitutes circumstantial evidence justifying instructions as to the effect of that character of evidence.

3. SAME—*when instruction does not authorize consideration of facts and circumstances not proved.* An instruction beginning, "if the jury believe, beyond all reasonable doubt, from all the evidence, facts and circumstances in this case," will not be construed as authorizing the jury to consider facts and circumstances not shown by the evidence.

4. SAME—*when an instruction does not assume that facts are proved beyond reasonable doubt.* An instruction will not be construed as assuming that facts are proved beyond reasonable doubt

merely because the language of the hypothesis reads, "if you be-
lieve from the evidence, facts and circumstances proven on the
trial, beyond all reasonable doubt," as the words "beyond all rea-
sonable doubt" will be held to qualify the words "if you believe."

5. SAME—*when new trial will not be granted to introduce ad-
ditional evidence.* A new trial will not be granted for the purpose
of enabling a party to introduce additional evidence which by the
use of reasonable diligence might have been produced on the trial.

6. BRIEFS—*arguments in briefs must have foundation in the
record.* It is a breach of professional propriety for attorneys to
introduce into the briefs in the Supreme Court arguments based
upon matters which have no foundation in the record. ·

WRIT OF ERROR to the Appellate Court for the Second
District;—heard in that court on writ of error to the
County Court of McHenry county; the Hon. D. T. SMI-
LEY, Judge, presiding.

WILLIAM L. PIERCE, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, VINCENT S.
LUMLEY, State's Attorney, A. D. RODENBERG, and MAT-
THEW MILLS, (CHARLES T. ALLEN, of counsel,) for the
People.

Mr. JUSTICE DUNN delivered the opinion of the court:

Ben Silver was convicted in the county court of Mc-
Henry county on the last five counts of an information
charging him in twenty counts with the sale of intoxicat-
ing liquor in anti-saloon territory and was sentenced to
thirty days' imprisonment and fined $100 on each count.
The judgment of imprisonment was not several, fixing a
definite term of imprisonment on each count, in accordance
with the decision in the case of *People* v. *Elliott*, 272 Ill.
592, but was in gross, and for this error the judgment was
reversed by the Appellate Court for the Second District and
the cause was remanded for the entry of a proper judg-
ment and sentence. The defendant has sued out a writ of
error to review the judgment of the Appellate Court.

286 – 32

Ben Silver was a junk dealer in the city of Harvard, in Chemung township, McHenry county, which is anti-saloon territory, where he has lived for sixteen years. He kept whisky and beer in his cellar in large quantities, in barrels, jugs and bottles. During 1917 he had several barrels of whisky and from eight to fifteen barrels of beer, each containing ten dozen pint bottles. Sam Kaplan, who was his cousin, had worked for him at times for four years and worked for him steadily in 1917 from February to November 20. William Sampkis worked for Silver for a year and two months previous to the trial in December, 1917, and Stanley Schappel for about six weeks in the summer of 1917. Kaplan testified that he saw Silver give Sampkis whisky to drink frequently at breakfast, dinner and supper and that Silver charged Sampkis for the liquor at twenty-five cents a drink, deducting the price from Sampkis' pay every Saturday night when they figured up the amount; that Sampkis was drunk all the time, and that Silver had five barrels of whisky in the cellar while Kaplan worked there. Kaplan also testified that he saw Silver sell liquor to Schappel every day for five or six weeks, and that Silver kept Schappel's account on a piece of paper, and Kaplan was present when they settled and heard Silver tell Schappel that he charged him twenty cents a drink. Kaplan also testified that Silver sold three bottles of beer for twenty-five cents, and that Kaplan saw him sell them both to Sampkis and Schappel. Schappel testified that while he was working for Silver he drank schnapps, for which Silver charged him twenty-five cents a drink and sixty-five cents, seventy-five cents or one dollar a bottle; that some call whisky schnapps, some call it whisky, some say booze; that he got whisky. Anna Schappel testified that she went to Silver and had a talk with him about her husband's working for him and complained that he did not pay her husband as much wages as he promised to pay, and Silver said he could not pay her,—that her husband drank

too much,—and Silver had everything on the book, and he charged for beer and whisky. She testified that her husband got whisky and beer, and Saturday nights he brought some home in a bottle,—sometimes a quart, sometimes a pint, sometimes a half-pint. Silver denied that he ever furnished either Schappel or Sampkis liquor that he made any charge for. He testified that he had liquor on his table every meal and once in a while gave his help a glass of liquor, and that he never took anything from their pay for liquor or received any payment, directly or indirectly, for liquor furnished them; that the whisky and beer he had in his cellar he got to drink himself, and the reason he bought so large a quantity was because he read they were going to stop manufacturing it; that he had seen the men take a drink but he did not have to give it to them; that they helped themselves. He testified he ordered whisky and beer for Sampkis and a case and a keg of beer for Schappel. He made these orders for them when he was ordering for himself and they paid for what they ordered. Sampkis testified that he never bought or paid for any drinks of whisky or beer while he was working for Silver or saw Silver charge or get any pay from Schappel for any drinks; that he never got any liquor from Silver or saw Schappel get a drink of beer or whisky in Silver's house, and that he ordered beer himself with Silver. These were all the witnesses who testified in the case.

Schappel, just before his employment by Silver, had been living at Freeport, where his household goods had been seized upon an attachment. Kaplan was sent to Freeport by Silver to settle the attachment suit and bring Schappel to Harvard. He paid the debt for which the attachment was issued and shipped Schappel's goods to Harvard, where Schappel and his family occupied a house the rent of which was paid by Silver, who also paid other bills for Schappel amounting altogether to about $130, and he was deducting $6 a week from Schappel's wages of $18 a week

to apply on Schappel's debt. Schappel left Silver's employment without notice and returned in the night time to Freeport. Kaplan left Silver's employment after a quarrel with him, which he says grew out of a dispute over his wages, the amount in controversy being $4, and Silver says it grew out of Kaplan's unpatriotic talk about the war. Sampkis corroborated Silver on this question.

The evidence for the prosecution was clearly sufficient to sustain the verdict. The extent to which the credibility of the witnesses was affected by their relation to the defendant, their contradiction by the defendant and Sampkis, the nature of the stories to which they testified, or other circumstances, it was the province of the jury to determine. It cannot be said that the jury acted unreasonably in accepting the testimony of the witnesses for the prosecution rather than those for the defendant or that there is clearly a reasonable doubt of the guilt of the defendant.

The court gave to the jury every instruction asked by either side,—fifteen for the People, twenty for the defendant. It is evident that no complicated legal question arose on which instruction was necessary, but each side, apparently fearing that the jurors might not be able to recognize a reasonable doubt if they should meet one in the consideration of the evidence, asked the court to give several instructions on that subject, and the court gave them all. It was not held in *People* v. *Wallace,* 279 Ill. 139, as counsel for the plaintiff in error insists, that the giving of five instructions defining "reasonable doubt" was such error as to require a reversal of the judgment. The judgment in that case was reversed because it was not sustained by the evidence. It was held that the evidence was not such as to remove all reasonable doubt of the defendant's guilt, and that in that case the effect of the instructions brought together in the record on the question of reasonable doubt, warning the jury against being misled by undue sensibility into regarding as reasonable, doubts which were only

chimerical or conjectural, and against going outside the evi-
dence to hunt up doubts created by resorting to trivial and
fanciful suppositions and remote conjectures, was to induce
the jury to believe that in the mind of the court there was
grave fear that the jury would think there was reasonable
doubt of the defendant's guilt when there was none. The
practice of giving numerous instructions of the character
indicated was condemned, but there was no attempt to lay
down any general rule controlling the giving of such in-
structions and it would be difficult to do so. On this rec-
ord, in view of the instructions asked and given on either
side, the plaintiff in error has no cause to complain of those
upon reasonable doubt.

Objection is made to three instructions because they re-
fer to the effect of circumstantial evidence when there was
no circumstantial evidence in the case. While there was
direct evidence of the offense there were also the facts of
the possession of an unusual quantity of intoxicating liquor
and of the permitting of it to be drunk in the house, which
constituted circumstantial evidence corroborative of the
statements of the People's witnesses.

Objection is made to other instructions which are based
upon the hypothesis, "if the jury believe, beyond all rea-
sonable doubt, from all the evidence, facts and circum-
stances in this case," because it is said they do not require
the facts and circumstances to be shown by the evidence.
The "facts and circumstances in this case" referred to in
this hypothesis can be understood in the connection in which
the words are used only as referring to the facts and cir-
cumstances proved in the case; but if it were otherwise,
the omission is corrected by a subsequent instruction by
which the jury were expressly instructed that personal opin-
ion as to facts not proved could not properly be considered
as the basis of a verdict; that the verdict must be formed
uninfluenced by any opinion or presumption not formed
upon the testimony.

Objections are made to instruction No. 15 because it selects a certain part of the testimony and unduly directs the attention of the jury to it, and that it assumes that certain facts tending to establish the guilt of the defendant are proved. The first criticism is based upon the fact that the instruction refers particularly to sales of liquor not paid for at the time of purchase. In making the application to this case the instruction necessarily refers to the evidence which makes the instruction pertinent,—that is, the evidence of the alleged charge to the purchaser's account and deduction from his wages. The second criticism is based upon the language of the hypothesis, "if you believe from the evidence, facts and circumstances proven on the trial, beyond all reasonable doubt," which, it is said, assumes that some facts and circumstances are proved beyond all reasonable doubt. It is a strained construction of the words which applies the phrase "beyond all reasonable doubt" to the facts and circumstances proved on the trial instead of the belief from the evidence, facts and circumstances proved on the trial. The belief is based upon the evidence, facts and circumstances proved, and they may be all taken into consideration though not proved beyond a reasonable doubt. The instruction means "if you believe beyond a reasonable doubt," and does not refer to facts and circumstances proved beyond a reasonable doubt.

Complaint is made of the action of the court in instructing the jury as to the form of their verdict. The only reference in the abstract to this action is in the words, "instruction as to the form of verdict given by the court to the jury." The purpose of the abstract is to present questions arising on the record. Nothing is presented for review on this question.

Newly discovered evidence was one of the reasons urged by the plaintiff in error upon the motion for a new trial, and he produced the affidavits of half a dozen witnesses, three of them as to statements made by Mrs. Schappel that

she had never been married to Stanley Schappel; that her husband was living in Pennsylvania and Schappel had a wife in the old country, but that since the war had broken out she did not know whether his wife was still living or not. This testimony would not have been competent. The other three affidavits referred to declarations of Kaplan that he wanted to get even with Silver for beating him, and efforts of Kaplan to induce the witnesses to testify falsely against Silver to getting drinks from him. No reason is shown why this testimony was not produced on the trial. For all that appears it may have been known to the defendant and his attorney at that time. It is impeaching evidence, only, and a new trial will not be granted for the purpose of enabling a party to introduce additional evidence which by the use of reasonable diligence might have been produced on the trial.

The counsel on both sides of this case have been guilty of the impropriety of presenting to the court in their briefs their statement of occurrences which they claim to bear on the merits of the case but which do not appear in the record. They refer to subsequent trials of other charges against the defendant in which the witnesses whose affidavits were produced on the motion for a new trial testified, and argue from the alleged results of such trials as to the effect which should be given to their affidavits in the consideration of this case. This is grossly improper. Counsel must know that the case will be reviewed solely on the record, and it is a breach of professional propriety to introduce into their briefs arguments based upon allegations which have no foundation in the record. Such a course ordinarily prejudices rather than helps the case of the counsel who takes it, but in this case both parties are equally guilty.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*